STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

No. D-0101-CV-2007-00307

DENNIS P. MURPHY, as Personal Representative
of the ESTATE OF WILLIAM D. CRUMPTON, deceased

       Plaintiff,

vs.

LAURA KAY, M.D., individually and in her official capacity;
LOGAN ROOT, M.D., individually and in his official capacity;
JOHN DOE DOCTORS 1-5, individually and in their official capacities;
GREG SOLANO, individually and in his official capacity
as SANTA FE COUNTY SHERIFF;
BILL BLANK, individually and in his official capacity;
GREG PARRISH, individually and in his official capacity; and
THE BOARD OF COUNTY COMMISSIONERS OF
SANTA FE COUNTY,

       Defendants.

ENDORSED
First Judicial District Court

FEB - 7 2007

Santa Fe, Rio Arriba &
Los Alamos Counties
PO Box 2268
Santa Fe, NM 87504-2268



## COMPLAINT FOR DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS, WRONGFUL DEATH AND COMMON LAW TORTS

Plaintiff, by and through his counsel, below-listed, and brings the following causes of action against Defendants:

## INTRODUCTION

1.    This Complaint alleges federal civil rights and state common law claims against persons and entities responsible for operation of the Santa Fe County Adult Detention Facility ("SFCADF") and the provision of medical care for inmates and detainees held at SFCADF. These claims arise from the deliberate and conscious failure to render appropriate medical care to William D. Crumpton ("CRUMPTON"), who was taken into custody on March 21, 2006 and died less than two days after

of state law. In connection with Plaintiff's §1983 claims, Kay is sued personally and in her official capacity as the director of medical services at the SFCADF.

7.     Defendant Logan Root, M.D. (hereinafter referred to as "Root") is now, and at all times material hereto has been, a resident of Santa Fe County. At all relevant times, Root was a physician licensed to practice in the State of New Mexico and was employed by the County to provide medical care at SFCADF. In connection with Plaintiff's §1983 claims, Root is sued personally and in his official capacity as a physician in the medical services division at the SFCADF. For purposes of 42 U.S.C. §1983, Root was acting under color of state law.

8.     Defendant Greg Solano (hereinafter referred to as "Solano") is, now and at all times material hereto has been, a resident of Santa Fe County, New Mexico. Since January 1, 2003, Solano has been the duly-elected Sheriff of Santa Fe County. At all times alleged herein, Solano acted under color of law and within the scope of his duties as the Santa Fe County Sheriff. At those times, Solano was the final decision-maker and policy-maker for the Santa Fe County Sheriff's Department and for the County in regard to law enforcement matters. For purposes of 42 U.S.C. §1983, Solano was acting under color of state law. In connection with Plaintiff's §1983 claims, Solano is sued personally and in his official capacity as Sheriff of Santa Fe County. Solano was responsible for the screening, hiring, training, monitoring, supervision and disciplining of subordinate employees of SFCADF.

9.     Defendant Bill Blank (hereinafter referred to as "Blank"), upon information and belief, is now, and at all times material hereto has been, a resident of Santa Fe County, New Mexico, and, at all times material hereto was the Warden of the SFCADF. The County and Blank were responsible for

Plaintiff's Complaint
For Wrongful Death
Page 4

4

all times material hereto was the Warden of the SFCADF. The County and Blank were responsible for the screening, hiring, training, monitoring, supervision and disciplining of subordinate employees of SFCADF. In connection with Plaintiff's §1983 claims, Blank is sued personally and in his official capacity as Warden of the SFCADF. For purposes of 42 U.S.C. §1983, Blank was acting under color of state law.

10.     Defendant Greg Parrish (hereinafter referred to as "Parrish"), upon information and belief, is now, and at all times material hereto has been, a resident of Santa Fe County, New Mexico. In 2001, Parrish was a member of the Santa Fe County Corrections Advisory Committee ("CAC"), and appointed by the County in this capacity. As part of the CAC Parrish participated in the investigation of the conditions at the SFCADF, to review its programs, policies and procedures and to report to the Board of County Commissioners ("Board") its findings and recommendations. Since 2004, Parrish at all times material hereto has been the director of the Santa Fe County Corrections Department. In connection with Plaintiff's §1983 claims, Parrish is sued personally and in his official capacity as the director of the Santa Fe County Corrections Department. Parrish was responsible for the screening, hiring, training, monitoring, supervision and disciplining of subordinate employees of SFCADF. For purposes of 42 U.S.C. §1983, Parrish was acting under color of state law.

11.     Upon information and belief, Defendants John Doe Doctors 1-5 (hereinafter referred to as "DOCTORS") are, and at all times material hereto were, residents of the State of New Mexico and were physicians licensed to practice in New Mexico and practicing in New Mexico. Doctors were

Plaintiff's Complaint
For Wrongful Death
Page 5

employed by the County to provide medical care at SFCADF. For purposes of 42 U.S.C. §1983, Doctors were acting under color of state law.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over Plaintiff's claims.

13.    Venue is properly located in this district pursuant to §38-3-1(A) and (F).

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.

### Historical Background about the operation of the SFCADF prior to the incarceration of Crumpton in 2004

14.    From October of 2001 through October 12, 2005, the MTC Corporation operated the SFCADF as a private detention facility and housed inmates pursuant to a contract with the County. Under that agreement, MTC agreed to meet or exceed all applicable operating standards, address facility needs for operation and maintenance, provide medical and mental health services and security, and comply with all local, state and federal laws.

15.    During that time period the Physicians Network Association ("PNA") was a Texas-based medical services provider specializing in providing services at jails and prisons. Under a contract with MTC, in effect as of July 2002, PNA by agreement provided medical care to inmates at SFCADF under the standards of the "American Correctional Association Standards for Adult Correctional Institutions, current edition, as supplemented; applicable federal, state and local laws and regulations, and medically accepted community standards of healthcare for New Mexico."

Plaintiff's Complaint
For Wrongful Death
Page 6

6

16.    From the beginning of PNA's contract with MTC relating to medical care at SFCADF and continuing through the relevant period, PNA allegedly failed to comply with the contract and failed to provide staffing sufficient to comply with the contract and to provide the services called for in the contract.

17.    Crumpton was incarcerated at the SFCADF from January 9, 2004 through the end of August, 2004. During that time period Crumpton received medical care from the medical division of the SFCADF, through PNA.

18.    Prior to Crumpton first being incarcerated in 2004 and up through the time of his release from SFCADF in August, 2004, the County, Parrish, and then County Sheriff Ray Sisneros had been repeatedly warned that SFCADF was dangerously understaffed and had insufficient policies and procedures, particularly in the area of medical care. Solano began his term as the elected Sheriff for Santa Fe County prior to the termination of the MTC contract in October, 2005.

19.    In 2001, the County established the Santa Fe County Corrections Advisory Committee ("CAC") to investigate conditions at SFCADF, review programs and policies, and report to the County with recommendations. Parrish participated in the activities of the CAC. The CAC identified deficiencies in medical care, including deficiencies in PNA's performance of its obligations under the contract with MTC.

20.    On or about March 20, 2002, the United States Department of Justice informed the County that it was investigating conditions at SFCADF pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997. In May of 2002, the Department of Justice conducted an on-site inspection of

Plaintiff's Complaint
For Wrongful Death
Page 7

7

SFCADF with experts in corrections, medical care, and mental health care. In a report issued on March 6, 2003, the Department of Justice found that deficiencies in the provision of medical care to inmates were so severe that it constituted a violation of the inmates' constitutional rights under the Eighth Amendment to the U.S. Constitution, which prohibits cruel and unusual punishment. Specifically, the Department of Justice found that "SFCADF, through PNA, provided inadequate medical services in the following areas: intake, screening, and referral; acute care; emergent care; chronic and prenatal care; and medication administration and management."

21.     Despite repeated and explicit notices of the inadequacies of SFCADF's policies, procedures, practices and staffing with respect to medical care, the County, Parrish and Solano failed to address these issues.

## B.

## Incarceration of Crumpton from January, 2004 through August, 2004

22.     Crumpton was initially jailed on January 9, 2004 at which time a comprehensive medical history was taken by the SFCADF medical staff. The medical history disclosed that Crumpton suffered from hypertension, blood clots, diabetes mellitus and other health conditions, all of which were well controlled with prescribed medication. A comprehensive medical examination was also performed on Crumpton upon entering the SFCDF in January, 2004 during which Crumpton completed a Health Appraisal Form. The Appraisal was subject to a three-tier review by a nurse, medical provider and a mental health provider. Crumpton disclosed to the medical staff in two different sections of the Health Appraisal Form that he was being treated for "IDDM", anxiety, stress, hypertension and blood clotting". Crumpton further informed the

medical staff that he was taking various prescribed medications to control his conditions including, but not limited to, Coumadin, an anticoagulant or blood thinner.

23.     During his incarceration at the SFCADF in 2004, Crumpton repeatedly complained to the medical staff that he desperately needed to take Coumadin because he was not being properly administered his medications.  In fact, Crumpton made several desperate requests to the medical staff, but his pleas fell on deaf ears.  It was not until after Crumpton's family complained to the local media about the failure of the SFCADF to administer his much needed medications, that the SFCADF began to properly administer his medications.

24.     On February 24, 2004 Crumpton attended the Diabetes Clinic at the SFCADF.  The Intake form explicitly states that Crumpton was taking Coumadin, in addition to Lisinopril, Zoloft, Vistaril and HCTZ.  Likewise, the Initial Visit form in the Hypertension Clinic informed the SFCADF that Crumpton needed to take Coumadin and that it was  prescribed for him by the doctor at the Veteran's Administration Hospital.

25.     The medical records for 2004 maintained by the SFCADF, including the Interdisciplinary Progress Notes and the Physician's Orders, are replete with references to Crumpton's medical need for Coumadin.

## C.

## Incarceration of Crumpton between March 21, 2006 and April 25, 2006

26.     On March 21, 2006, Crumpton was incarcerated at the SFCADF for an alleged probation violation.  On March 21, 2006 during the SFCADF Medical Intake and Screening Interview, Crumpton, again, informed the medical staff that he was necessarily taking Coumadin, among other medicines.  The

Plaintiff's Complaint
For Wrongful Death
Page 9

"Chronic Illness" section of the Intake form specifically listed Coumadin as one of his prescribed medications. Later that day, and after Crumpton had signed a Medical Release form for the benefit of the SFCADF Medical Division, the SFCADF transmitted, by facsimile, a Medication Verification form to the Veterans Administration to verify all prescribed medications that Crumpton disclosed to the SFCADF. The list of medicines provided by the SFCADF for verification failed to include Coumadin.

27.    On April 6, 2006, the attending doctor at SFCADF specifically noted in the records that the facility needed to contact Crumpton's VA doctor, Dr. Drummer, about Crumpton's medical history of blood clots and his use of Coumadin. The record specifically informed the SFCADF Medical Division of the critical nature of Crumpton's need for Coumadin and his blood clot condition by referring to each as "...**very imp**". The record notes that Crumpton signed a medical release form permitting the SFCADF to obtain the required medical information from Dr. Drummer.

28.    On April 6, 2006, Crumpton informed the same doctor at the SFCADF that he had been on Coumadin daily for the past 6 years.

29.    The prescription records from the Veterans Administration show that Crumpton had refilled the Coumadin prescription at least two times in 2006, and prior to his incarceration. Crumpton informed the SFCADF about the specific weekly schedule he followed when taking the Coumadin, 7.5 mg, 4 days a week and 10mg 3 days per week. That information was recorded in the "Problem List" form which was contained in the medical records maintained by the SFCADF.

30.    Despite the express knowledge of the SFCADF and the express concern of the SFCADF doctor in the record dated April 6, 2006, SFCADF, Kay, Root, Blank and Doctors callously disregarded the life-threatening nature of Crumpton's susceptibility to blood clotting.

Plaintiff's Complaint
For Wrongful Death
Page 10

10

31.     As the Plaintiff is informed and believes, the SFCADF ignored the complete medical chart for Crumpton including, but not limited to, his 2004 medical records, and the Defendants County, Kay, Root, Blank and Doctors failed to ensure that the medical chart for Crumpton in 2006 was complete.

32.     During the time he was incarcerated in 2006 Crumpton continually looked fatigued, he continuously complained to the SFCADF, the medical staff and his cell mates about his health.

33.     On April 27, 2006, two days after his discharge from the SFCADF, Crumpton died, after having collapsed on the front lawn outside of his home, where he lived with his son, Christopher.

34.     Christopher was the first person to reach Crumpton after his collapse and he called 911 for emergency help. Crumpton was immediately transported to St. Vincent Hospital.  He was pronounced dead at 11:28 a.m., while his two kids and his ex-wife waited, fearfully.  Between the time of his collapse and the time of his death, Crumpton repeatedly told his son that he could not breath, that he was frightened and that he feared he was going to die.

35.     The Office of the Medical Investigator for the State of New Mexico, which performed an autopsy on Crumpton, determined that he died as the result of a pulmonary thromboembolism, or blood clot in his lung, a condition that the Coumadin is intended to prevent and, in all probability, would have prevented.

36.     If Crumpton's requests for Coumadin had not been ignored, or if proper procedures had been followed, or if the complete medical chart had been reviewed concerning his medical condition, Crumpton would have continued to receive the treatment he was being rendered by the Veterans Administration immediately prior to his incarceration, his blood clotting condition could have been properly managed and controlled and, Crumpton's life would have been prolonged.

Plaintiff's Complaint
For Wrongful Death
Page 11

11

37.    Because of the failure to properly treat Crumpton's condition and the failure to consider his past medical history, he was deprived of the opportunity to obtain the appropriate medical treatment he had already been given by the VA to abate the risk of developing a blood clot and, he was deprived of the opportunity to prolong his life beyond the age of 49.

## FIRST CAUSE OF ACTION

### (Claims Against Kay, Root and Doctors for Deprivation of Civil Rights Under 42 U.S.C. § 1983)

38.    The contents of paragraphs 1-37, above, are incorporated hereinto by reference as if set forth in full.

39.    Kay, Root and Doctors had a duty to refrain from violating Crumpton's constitutional rights and, in particular, had a duty to provide treatment for his serious medical needs.

40.    As a result of Crumpton's repeated requests, demands and pleas for administration of his Coumadin medication from the time he first was taken into custody at SFADC on March 21, 2006, Kay, Root, Doctors and the employees of the SFCADF knew or reasonably should have known that Crumpton had serious medical needs including, but not limited to, a need for proper administration of his Coumadin medication and proper treatment of his blood clotting condition.

41.    Kay, Root, Doctors and the employees of the SFCADF acted with deliberate indifference to Crumpton's serious medical needs by, among other things, failing to administer medication to Crumpton without any investigation of the life threatening nature of his risk of developing blood clots.

42.    The conduct of Kay, Root, Doctors and the employees of the SFCADF deprived Crumpton of his constitutional right to substantive due process under the Fourteenth Amendment to the United States

Constitution and his right not to be subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The conduct of Kay, Root, Doctors and the employees of the SFCADF was intentional, unreasonable, reckless, wanton, willful and callously indifferent to Crumpton's Constitutional rights.

43.    The rights in question which Plaintiff alleges were violated by Kay, Root, Doctors and the employees of the SFCADF were clearly-established prior to March 21, 2006, and any reasonable, competent person similarly situated would have been aware that the conduct of Kay, Root, Doctors and the employees of the SFCADF, as described herein, would violate Crumpton's Constitutional rights.

44.    The conduct of Kay, Root, Doctors and the employees of the SFCADF, described above, was a direct and proximate cause of the deprivation of Crumpton's clearly-established Fourteenth Amendment and/or Eighth Amendment rights, which resulted in the injuries to Crumpton which resulted in his death and the damages described below.

## SECOND CAUSE OF ACTION

### (Supervisory Liability Claims Against Kay
for Deprivation of Civil Rights Under 42 U.S.C. §1983)

45.    The contents of paragraphs 1- 44 above, are incorporated herein by reference as if set forth in full.

46.    Kay, as the medical director of SFCADF had a duty to exercise due care in the supervision of the SFCADF medical personnel. In addition, Kay had a duty to assure an adequate level of staffing and to properly screen, hire, train, monitor, supervise and/or discipline employees of the SFCADF Medical Division. As part of that responsibility, Kay had a duty to:

Plaintiff's Complaint
For Wrongful Death
Page 13                                    13

A.    Conduct a reasonable and adequate applicant screening process, including background investigations, to determine whether applicants for employment were appropriately qualified to work in the medical division of the SFCADF;

B.    Assure that medical personnel received appropriate and adequate training, including at a minimum the amounts required by law, and to make sure that the medical personnel understood the training that was or should have been provided;

C.    Prepare, adopt and inculcate appropriate policies, procedures and protocols regarding the rendering of medical services at SFCADF, including the diagnosis and treatment of hypertension and blood clotting and to follow up on recommendations such as that noted by the treating physician at SFCADF on April 6, 2006;

D.    Assure proper levels of staffing of all shifts by competent, qualified, medical personnel; and

E.    Monitor or discipline employees of SFCADF in order to assure that they complied with policies, procedures and protocols.

47.    Prior to March 21, 2006, Kay knew or reasonably should have known that Root, Doctors and the employees of SFCADF Medical Division, along with other personnel at SFCADF, were acting improperly and violating the Constitutional rights of persons incarcerated there. Kay knew or reasonably should have known that Root, Doctors and employees of the SFCADF Medical Division lacked adequate training, and were operating without knowledge of or in disregard for SFCADF policies, procedures and protocols, particularly those applying to the provision of medical care and the administration of medication.

Plaintiff's Complaint
For Wrongful Death
Page 14

14

48.    On March 21, 2006 and prior thereto, Kay knew or reasonably should have known that Root, Doctors and the employees of SFCADF Medical Division should never have been hired by the County and were not qualified or competent to provide proper medical services.

49.    Kay breached the foregoing duties by being deliberately indifferent to the constitutional rights of Crumpton and by failing to properly screen, hire, train, monitor, supervise and/or discipline Root, Doctors and the employees of the SFCADF Medical Division. In particular, Kay failed to assure proper levels of staffing, failed to inculcate existing policies, failed to modify or revise policies related to medical care, failed to implement appropriate training, failed to appropriately discipline Root, Doctors and the employees of the SFCADF Medical Division and failed to take other appropriate supervisory actions to correct the problems which resulted in the deprivation of the rights of Crumpton at the hands of Root, Doctors and the employees of the SFCADF Medical Division.

50.    The conduct of Kay, described above, deprived Crumpton of his constitutional right to substantive due process under the Fourteenth Amendment and/or constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The conduct of Kay was intentional, unreasonable, reckless, wanton, willful and/or callously indifferent to the rights of persons incarcerated at SFCADF, including Crumpton, and was shocking to the conscience.

51.    The rights in question, which Plaintiff alleges were violated by Kay were clearly-established prior to March 21, 2006 and any reasonable person similarly situated would have been aware that the conduct of Kay, described herein, would violate Crumpton's constitutional rights.

Plaintiff's Complaint
For Wrongful Death
Page 15

15

52.    The conduct of Kay, described above, was a direct and proximate cause of 1) the deprivation of the clearly-established Fourteenth and/or Eighth Amendment rights of Crumpton, 2) the prolonged injuries to Crumpton which resulted in his death, and 3) the damages described below.

## THIRD CAUSE OF ACTION

### (Claims Against Blank for Deprivation of Civil Rights Under 42 U.S.C. §1983)

53.    The contents of paragraphs 1- 52 above, are incorporated herein by reference as if set forth in full.

54.    Blank had a duty to refrain from violating Crumpton's constitutional rights and, in particular, had a duty to provide him with humane conditions of confinement and to provide treatment for his serious medical needs.

55.    Based upon Crumpton's complaints to the SFCADF about not receiving his Coumadin from the time he was booked on March 21, 2006 and based upon the SFCADF doctor's recommendations on April 6, 2006, for further inquiry to determine the nature of Crumpton's risk of developing blood clots, Blank knew, or reasonably should have known, that Crumpton had serious medical needs, including but not limited to, a need for proper treatment and medication to abate his risk of developing blood clots.

56.    Blank acted with deliberate indifference to Crumpton's serious medical needs by, among other things, failing and/or refusing to take action to ensure that Crumpton's condition was, at a minimum, properly investigated to determine what proper medical treatment he required.

57.    Blank's conduct deprived Crumpton of his Constitutional right to substantive due process under the Fourteenth Amendment and/or constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

58.    As the warden of SFCADF, Blank had a duty to exercise due care in the supervision of the SFCADF and its employees, including Root, Kay and Doctors.  In addition, Blank had a duty to assure an adequate level of staffing and to properly screen, hire, monitor, supervise and/or discipline SFCADF employees.  As part of that supervisory responsibility, Blank had a duty to:

A.    Conduct a reasonable and adequate screening process to determine whether the employees of SFCADF including Kay, Root and Doctors were sufficiently qualified to provide medical care to inmates at SFCADF;

B.    Assure that medical personnel received appropriate and adequate training, as required by law; and to make sure that the medical personnel understood the training that was or should have been provided;

C.    Prepare, adopt and inculcate appropriate policies, procedures and protocols regarding the rendering of medical services at SFCADF;

D.    Assure proper levels of staffing of all shifts by competent, qualified, medical personnel; and

E.    Monitor or discipline  employees of SFCADF  including Kay, Root and Doctors in order to assure that they complied with policies, procedures and protocols.

59.    Prior to March 21, 2006, Blank knew or reasonably should have known that the SFCADF employees, along with other personnel at SFCADF, were acting improperly and violating the constitutional rights of persons incarcerated there.  Blank knew or reasonably should have known that the SFCADF

Plaintiff's Complaint
For Wrongful Death
Page 17

employees lacked adequate training, and were operating without knowledge of or in disregard for SFCADF policies, procedures and protocols, particularly those applying to the provision of medical care.

60.   As of March 21, 2006, Blank knew or reasonably should have known that the SFCADF employees including Kay, Root and Doctors, should never have been hired by SFCADF and were not qualified or competent to provide proper medical services to inmates.

61.   Blank breached the foregoing supervisory responsibilities by being deliberately indifferent to the constitutional rights of Crumpton and by failing to properly screen, hire, monitor, supervise and/or discipline SFCADF and its employees including Kay, Root and Doctors. In particular, Blank failed to assure proper levels of staffing, failed to inculcate existing policies, failed to modify or revise policies related to medical care, failed to implement appropriate training, failed to appropriately discipline SFCADF and its employees and failed to take other appropriate supervisory actions to correct the problems which resulted in the deprivation of the rights of Crumpton at the hands of personnel at SFCADF.

62.   The conduct of Blank, described above, deprived Crumpton of his constitutional right to substantive due process under the Fourteenth Amendment and/or constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The conduct of Blank was intentional, unreasonable, reckless, wanton, willful and/or callously indifferent to the rights of persons incarcerated at SFCADF, including Crumpton, and was shocking to the conscience.

63.   The rights in question, which Plaintiff alleges were violated by Blank were clearly-established prior to March 21, 2006 and any reasonable corrections professional in Blank's position would have been aware that his conduct, as described herein, would violate Crumpton's constitutional rights.

Plaintiff's Complaint
For Wrongful Death
Page 18

64.     The conduct of Blank, described above, was a direct and proximate cause of the deprivation of the clearly-established Fourteenth and/or Eighth Amendment rights of Crumpton, as well as the injuries to Crumpton which resulted in his death and the damages described below.

## FOURTH CAUSE OF ACTION

### (Claims Against Parrish for Deprivation of Civil Rights Under 42 U.S.C. §1983)

65.     The contents of paragraphs 1- 64, above, are incorporated herein by reference as if set forth in full.

66.     Before Crumpton was taken into custody at SFCADF, Parrish had knowledge of the policies, procedures and the existing deficiencies related to medical care at the SFCADF. Parrish was also familiar with the Department of Justice investigation of such conditions conducted in 2002 at SFCADF, and, through his participation in the activities of the CAC, was aware of warnings that SFCADF was dangerously understaffed and had insufficient policies and procedures in the area of medical care.

67.     Parrish had a duty to refrain from violating Crumpton's constitutional rights and, in particular, had a duty to ensure that Crumpton was provided with humane conditions of confinement, including treatment for his serious medical needs.

68.     Parrish breached these duties by his deliberate indifference to SFCADF's failure to comply with the National Standards for the operation of a correctional facility which required adequate staffing and the adoption and implementation of, and compliance with the applicable policies and procedures relating to medical care. Parrish knew or reasonably should have known that failure to require such compliance created a substantial risk of harm to inmates, such as Crumpton, with serious medical needs. Parrish was deliberately indifferent to the risk to Crumpton's health and his deliberate indifference was shocking to the conscience.

69.     Parrish's conduct, described above, deprived Crumpton of his constitutional right to substantive due process under the Fourteenth Amendment and/or constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The conduct of Parrish was intentional, unreasonable, reckless, wanton, willful and callously indifferent to the rights of persons incarcerated at SFCADF, including Crumpton.

70.     The rights in question, which Plaintiff alleges were violated by Parrish, were clearly-established prior to March 21, 2006 and any reasonable corrections professional in Parrish's position would have been aware that his conduct, as described herein, would violate Crumpton's constitutional rights.

71.     The conduct of Parrish, described above, was a direct and proximate cause of the deprivation of Crumpton's clearly-established Fourteenth and/or Eighth Amendment rights, as well as the injuries to Crumpton which resulted in his death and the damages described below.

## FIFTH CAUSE OF ACTION

### (Claims Against Solano for Deprivation of Civil Rights Under 42 U.S.C. §1983)

72.     The contents of paragraphs 1-71, above, are incorporated hereinto by reference as if set forth in full.

73.     Solano, as Sheriff of the County, was the final decision-maker and policy-maker for the County in regard to the operation of SFCADF. Solano had access to all books, reports and records of SFCADF, including computer records pertaining to the operation, management or maintenance of the facility (including financial records). Solano also had a right to review all employee job applications including,

Plaintiff's Complaint
For Wrongful Death
Page 20

without limitation, resumes, job duties, past experience, background checks, interview notes and employment applications. Solano also had access to all information known to Parrish and the County, as described above.

74.     Solano had a duty to exercise due care in the supervision of the provision of correctional services by SFCADF. This included a duty to assure that SFCADF, Blank and Kaye properly screened, hired, trained, monitored, supervised and/or disciplined employees working at SFCADF, including Root and Doctors.

75.     Solano also had a duty to assure that SFCADF complied with its obligations in terms of staffing, policy formulation and implementation, and training. In particular, Solano had a duty to assure that SFCADF complied with its obligation to have appropriate policies and procedures in the area of medical care.

76.     Solano also had a duty to refrain from violating Crumpton's constitutional rights and, in particular, had a duty to inmates such as Crumpton to assure that they were provided with humane conditions of confinement. Because of Crumpton's physical condition, Solano owed him a special duty to protect him from harm.

77.     Solano breached his duty by his deliberate indifference to SFCADF's failure to hire adequate staff, formulate and enforce appropriate policies, provide adequate training and supervision to subordinate employees and to otherwise assure that Crumpton was provided with humane conditions of confinement and given appropriate treatment for the serious medical conditions about which they were aware. The deficiencies in SFCADF's staffing, policies, procedures and training, particularly in the area of medical care, were so obvious that any competent corrections professional would easily recognize the necessity for immediate remedial action. Solano knew or reasonably should have known that their failure to require SFCADF to comply with its obligation to provide appropriate staffing, policies, procedures and training

Plaintiff's Complaint
For Wrongful Death
Page 21

would cause grave risks to inmates, such as Crumpton.   Solano was deliberately indifferent to the risks to Crumpton's health, and this deliberate indifference was shocking to the conscience.

78.     The conduct of Solano, described above, deprived Crumpton of his constitutional right to substantive due process under the Fourteenth Amendment and/or constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.   The conduct of Solano was intentional, unreasonable, reckless, wanton, willful and/or callously indifferent to the rights of persons incarcerated at SFCADF, including Crumpton.

79.     The rights in questions, which Plaintiff alleges were violated by Solano, were clearly-established prior to March 21, 2006, and any reasonable sheriff or corrections official would have been aware that the conduct of Solano, described herein, would violate Crumpton's constitutional rights.

80.     The conduct of Solano, described above, was a direct and proximate cause of the deprivation of Crumpton's clearly-established Fourteenth and/or Eighth Amendment rights, as well as the injuries to Crumpton which resulted in death and the damages described below.

## SIXTH CAUSE OF ACTION

### (Claims Against Santa Fe County for Deprivation of Civil Rights Under 42 U.S.C. §1983)

81.     The contents of paragraphs 1-80, above, are incorporated herein by reference as if set forth in full.

82.     The County and Solano, as the official policy-makers and final decision-makers for the County in the area of corrections, exhibited deliberate indifference to the constitutional rights of persons incarcerated at SFCADF and engaged in an informal custom or policy of failing to act appropriately in regard to the

Plaintiff's Complaint
For Wrongful Death
Page 22

supervision of SFCADF's operation of the SFCADF, as well as the conduct of the employees of the SFCADF. The County and Solano repeatedly permitted or condoned constitutional deprivations and violations by the employees of the SFCADF.

83.    The County and Solano maintained a custom or policy which exhibited deliberate indifference to the constitutional rights of citizens and which permitted or condoned deviations from constitutional standards for the operation of correctional facilities. These informal customs or policies permitted or condoned the deprivation of constitutional rights, including the right to custodial medical care for Crumpton's serious medical needs.

84.    The County, acting through Parrish, and Solano were confronted with an obvious need to require SFCADF to comply with constitutional standards as indicated by the Department of Justice investigation, described above, in order to prevent the violation of constitutional rights of persons incarcerated at SFCADF, including Crumpton. The failure of the County and Solano to require SFCADF to comply with constitutional standards constituted deliberate indifference and was shocking to the conscience. The supervisory deficiencies, identified above, were closely related to the injuries suffered by Crumpton which resulted in his death.

85.    The conduct of the County, as demonstrated by the actions of Parrish, and Solano and the informal customs and policies, described above, were a direct and proximate cause of the deprivation of the clearly-established Fourteenth and/or Eighth Amendments rights of Crumpton, as well as the injuries to Crumpton which resulted in his death and the damages described below.

Plaintiff's Complaint
For Wrongful Death
Page 23

23

## SEVENTH CAUSE OF ACTION

### (Claims Against The County Common Law - Negligent Failure to Protect, Medical Negligence, Intentional Infliction of Emotional Distress)

86.    The contents of paragraphs 1 - 85, above, are incorporated herein by reference as if set forth in full.

87.    The County and its employees had a duty to exercise ordinary care to protect the health and safety of persons housed in SFCADF and, in particular, to take reasonable steps to provide medical care to persons housed in SFCADF, including Crumpton.

88.    The County and its employees had a duty to exercise ordinary care in carrying out their duties and providing medical care at SFCADF in such a way that inmate safety and medical care were not unreasonably compromised.

89.    In particular, the County and its employees had a duty to Crumpton to exercise the degree of care, skill and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances, giving due consideration to the locality.

90.    The County and its employees breached this standard of care by ignoring requests for medication made by Crumpton as well as the information they possessed in their medical records, by failing to conduct the recommended further inquiry into the nature of Crumpton's risk of developing blood clots and, by failing to properly treat Crumpton's life threatening medical condition.

91.    The conduct of the County and its employees was extreme and outrageous.

92.    The County employees acted with intent to cause Crumpton pain, suffering and/or emotional distress, or with reckless disregard for Crumpton's pain, suffering and/or emotional distress.

Plaintiff's Complaint
For Wrongful Death
Page 24

24

93.    Crumpton's mental distress was extreme and severe.

94.    The actions and/or failures to act of the County and its employees were a direct and proximate cause of the injuries to Crumpton resulting in his death and the damages to Plaintiff as set forth below.

## EIGHTH CAUSE OF ACTION

### (Supervisory Liability Claims Against Blank, Kay and the County Under Common Law)

95.    The contents of paragraphs 1 through 94, above, are incorporated herein by reference as if set forth in full.

96.    Blank, Kay and the County had a duty to exercise reasonable care in carrying out their duties and in providing medical care at SFCADF in such a way that inmates' safety and medical care were not unreasonably compromised.

97.    Blank, Kay and the County breached their duties by failing to adopt and inculcate adequate policies, procedures, protocols and post orders relating to medical care, by failing to provide adequate staffing, training, facilities and equipment for medical care, and in otherwise failing to meet their duties in this regard.

98.    The acts or failures to act were a direct and proximate cause of the injuries to Crumpton resulting in his death and the damages to Plaintiff as set forth below.

99.    County is liable for the tortious acts and omissions of Blank and Kay under the doctrine of *respondeat superior.*

Plaintiff's Complaint
For Wrongful Death
Page 25

## NINTH CAUSE OF ACTION

### (Claims Against Blank Under Common Law – Negligent Failure to Protect, Intentional Infliction of Emotional Distress)

100.   The contents of paragraphs 1 - 99, above, are incorporated herein by reference as if set forth in full.

101.   Blank, as warden of SFCADF and supervisor of SFCADF and its employees, had a duty to exercise reasonable care in carrying out his duties and in ensuring that inmates' safety and medical care were not unreasonably compromised.  Blank also had a duty to assure adequate staffing, as well as to adopt, inculcate and implement appropriate policies, procedures, protocols and post orders relating to inmate medical care.  In addition, Blank had a duty to properly screen, hire, monitor, supervise and discipline SFCADF and its employees.

102.   Blank breached these duties in that he knew or should have known that Crumpton was not receiving proper medical treatment and Blank failed to take action to ensure that Crumpton received proper medical treatment.  In addition, Blank breached these duties by failing to assure adequate staffing for medical care, failing to adopt, inculcate and implement appropriate policies, procedures, protocols and post orders relating to inmate medical care and failing to properly screen, hire, monitor, supervise and discipline SFCADF and its employees.

103.   Blank's conduct was extreme and outrageous.

104.   Blank acted with intent to cause Crumpton pain, suffering and/or emotional distress, or with reckless disregard for Crumpton's pain, suffering and/or emotional distress.

105.   Crumpton's mental distress was extreme and severe.

106.    Blank's actions and/or failures to act were a direct and proximate cause of the injuries to Crumpton which resulted in his death and the damages to Plaintiff set forth below.

## TENTH CAUSE OF ACTION

### (Claims Against the County Under Common Law - Negligent Failure to Protect, Supervisory Liability, *Respondeat Superior*)

107.    The contents of paragraphs 1 through 106, above, are incorporated herein by reference as if set forth in full.

108.    The County had a duty to exercise reasonable care in carrying out its duties and in managing and operating SFCADF in such a way that inmates' safety and medical care were not unreasonably compromised.

109.    The County breached its duty of reasonable care by failing to properly carry out its duties in managing and operating SFCADF and providing adequate medical care to inmates housed in SFCADF, including Crumpton.  In particular, the County breached its duties by failing to adopt and inculcate adequate policies, procedures, protocols and post orders relating to medical care, by failing to provide adequate staffing, training, facilities and equipment for medical care, and in otherwise failing to meet its duties in this regard.

110.    The County's acts or failures to act were a direct and proximate cause of the injuries to Crumpton resulting in his death and the damages to Plaintiff as set forth below.

111.    The County is liable for its employees tortious acts and omissions under the doctrine of *respondeat superior*.

Plaintiff's Complaint
For Wrongful Death
Page 27

## TWELFTH CAUSE OF ACTION

### (Claim Against the County, Blank, Kay, Root and Doctors for Civil Conspiracy)

112.   The contents of paragraphs 1 through 111, above, are incorporated herein by reference as if set forth in full.

113.   By virtue of the specific acts described above, the County, Blank, Kay, Root and Doctors formulated and carried out a conspiracy to disregard the true nature of Crumpton's medical condition and to deprive Crumpton of appropriate treatment for his serious medical needs...This constituted a conspiracy to deprive Crumpton of his rights under the Eighth and Fourteenth Amendments and to engage in tortious conduct.

114.   The conduct of the County, Blank, Kay, Root and Doctors in furtherance of the conspiracy was a direct and proximate cause of the injuries to Crumpton resulting in his death and the damages to Plaintiff as set forth below.

## THIRTEENTH CAUSE OF ACTION

### (Claims Against Kay, Root and Doctors Common Law - Medical Negligence, Intentional Infliction of Emotional Distress)

115.   The contents of paragraphs 1 through 114, above, are incorporated herein by reference as if set forth in full.

116.   As attending physicians Kay, Root and Doctors, were responsible for all aspects of the care of Crumpton during his incarceration between March 21, 2006 and April 25, 2006, including but not limited to, the treatment of his life-threatening condition and the administration of medication while he was incarcerated and under their care.

Plaintiff's Complaint
For Wrongful Death
Page 28

117.   In rendering care to Crumpton, including but not limited to, the treatment of his life-threatening condition and the administration of medication, Kay, Root and Doctors were under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by a reasonably well-qualified physician rendering treatment and administering medication to a patient including, but not limited to, Crumpton.

118.   Kay, Root and Doctors breached that duty in that they failed to possess and/or apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified physicians rendering treatment and administering medication to a patient including, but not limited to, Crumpton.

119.   As a direct and proximate result of the failure of Kay, Root and Doctors to use the skill and care ordinarily used by reasonably well-qualified physicians rendering treatment and administering medication to a patient including, but not limited to, Crumpton, decedent was denied Coumadin to treat his life-threatening risk of developing blood clots, and he suffered from an agonizing deterioration of his health during his incarceration, resulting in Crumpton developing a thromboembolism from which he eventually died.

## DAMAGES

120.   The contents of paragraphs 1 - 119, above, are incorporated herein by reference as if set forth in full.

121.   As a direct and proximate result of the conduct of Defendants, described above, the Estate of Crumpton, as represented by its personal representative, is entitled to recover damages against Defendants as follows:

Plaintiff's Complaint
For Wrongful Death
Page 29

A.    Crumpton endured intense physical pain and suffering and emotional distress during the course of his incarceration at SFCADF and up until the time of his death. Therefore, the Estate of Crumpton is entitled to recover damages in an amount to be determined at the trial of this cause.

B.    Crumpton lost the chance to obtain a proper treatment of his medical condition, lost the chance that proper treatment would have abated his risk of developing blood clots which would have, in all probability, prolonged his life. Therefore, the Estate of Crumpton is entitled to recover damages in an amount to be determined at the trial of this cause based on the percentage value of the lost opportunity for better treatment.

C.    The Estate of Crumpton has lost the present worth of the life of its decedent to his estate, including his enjoyment of life, having regard to the aggravating circumstances attending the wrongful and unlawful acts which resulted in his death, as provided for and as amplified under federal and New Mexico law. Such damages include hedonic damages for the value of the loss of life itself, as well as economic damages, including impairment to lifetime earning capacity and loss of household services. Therefore, the Estate of Crumpton is entitled to recover damages in an amount to be determined at the trial of this cause.

D.    The Estate of Crumpton has incurred reasonable and necessary expenses for his funeral and burial, and is entitled to recover special damages therefore.

122.    The Estate of Crumpton is entitled to recover an award of compensatory damages for the loss of consortium to his two children against Defendants in amounts to be determined at the trial of this cause.

Plaintiff's Complaint
For Wrongful Death
Page 30

123.    Because the conduct of Defendants involved intentional misconduct, recklessness, gross negligence, willfulness and/or callous indifference, and/or because Defendants' conduct was motivated by malice, evil motive or intent, the Estate of Crumpton is entitled to recover a separate award of punitive and exemplary damages against each individual Defendant.

WHEREFORE, Plaintiff requests the following relief against Defendants:

A.    Awards of compensatory damages as set forth above;

B.    Awards of punitive damages as set forth above;

C.    An award of pre- and post-judgement interest on any amounts recovered herein;

D.    The costs of action herein, including attorneys fees pursuant to 42 U.S.C. §1988 on Plaintiff's §1983 claims; and

E.    Such other and further relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

SCOTT F. VOORHEES, P.C.

by: Scott F. Voorhees
P.O. Box 6340
Santa Fe, NM 87502-6340
(505) 820-3302

and

The Whitley Law Firm, P.C.
L. Val Whitley
238 Griffin Street
Santa Fe, NM 87501
(505) 992-2903
Attorneys for Plaintiff

Plaintiff's Complaint
For Wrongful Death
Page 31

31